***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 ***********
The following were submitted to the Deputy Commissioner as:
 ISSUES
1. Whether Plaintiff is entitled to have Defendants provide her with a laptop computer, voice recognition software and other equipment. *Page 2 
2. Whether Plaintiff is entitled to have Defendants pay for tuition, books, fees, mileage and other expenses in furtherance of her education.
3. To what medical compensation Plaintiff is entitled.
4. Whether Defendants are entitled to an Order directing Plaintiff's compliance with vocational rehabilitation efforts.
5. Whether Plaintiff is entitled to attorney fees under N.C. Gen. Stat. § 97-88.1.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff and Defendants are subject to the North Carolina Workers' Compensation Act.
4. Plaintiff was an employee of Defendant-Employer on December 21, 2003.
5. Plaintiff sustained a compensable injury by accident on or about December 21, 2003 while working for Defendant-Employer, when an Alzheimer's patient she was assisting panicked and climbed out of bed over Plaintiff's back, injuring her back, neck and shoulder.
6. Plaintiff's average weekly wage is $1,020.00. *Page 3 
7. Defendants accepted this claim on a Form 60 dated January 20, 2005, and Defendants have paid temporary total disability compensation at the rate of $674.00 per week from December 6, 2004 to January 14, 2005, and July 10, 2006 to the present.
8. Defendants have paid the waiting period.
9. The parties have not participated in mediation per order of Deputy Commissioner Schafer denying Defendants' request for an order for mediation.
 *********** EXHIBITS
1. The following documents were submitted before the Deputy Commissioner as stipulated exhibits:
 a. Exhibit 1: Executed Pre-Trial Agreement
 b. Exhibit 2: Defendants' discovery responses (with verification submitted on 11/21/08)
 c. Exhibit 3: Correspondence concerning Dr. Miller's 5/19/08 letter
 d. Exhibit 4: Letter from Plaintiff's counsel to Defendants' counsel dated 8/15/08
 e. Exhibit 5: North Carolina Assistive Technology Program invoice dated 9/15/08
 f. Exhibit 6: CD of Plaintiff's medical records
2. The following documents were submitted before the Deputy Commissioner as a Defendants' exhibit:
 a. Exhibit 1: Letter from Plaintiff's counsel to Defendants' counsel dated 7/2/08 and attachments thereto *Page 4 
3. Transcripts of the depositions of the following were received following the hearing before the Deputy Commissioner:
 a. Dr. Joshua Miller
 b. Joanna C. Howell (with Plaintiff's Exhibits 1-13)
 c. Shelby G. Kennerly (with Plaintiff's Exhibit 1)
 *********** EVIDENTIARY RULINGS
The objections raised by counsel at the depositions taken in this matter are ruled upon in accordance with the law and the opinion in this Opinion and Award.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 57 years old, having been born on May 17, 1952. She served in the U.S. Army during the Vietnam era, receiving medic and LPN training. She earned an associate's level RN degree from Caldwell Community College in 1977 and thereafter worked as a registered nurse.
2. Following her compensable injury, Plaintiff continued working with Defendant-Employer until December 6, 2004, when she underwent a three-level cervical discectomy and decompression with fusion of the C4-5, C5-6 and C6-7 vertebrae using a bone autograft and a titanium plate with eight screws.
3. Plaintiff returned to work with Defendant-Employer on January 14, 2005, just five weeks after the surgery. She worked in a light duty capacity as a floor nurse. *Page 5 
4. Plaintiff aggravated her compensable condition while reviving a patient during a crisis episode on April 27, 2005, but she continued to work.
5. Dr. Maxy, the neurosurgeon who performed the December 2004 surgery on Plaintiff, placed her at maximum medical improvement on October 12, 2005. At that time, Dr. Maxy assigned the following work restrictions: no lifting, pushing or pulling more than 15 pounds, and occasional but not repetitive twisting, stooping and bending. Plaintiff was unable to perform her normal duties as a nurse and was permanently limited to the light physical demand level.
6. Dr. Maxy's restrictions were consistent with the results of a functional capacity evaluation Plaintiff underwent on September 16, 2005, which showed that Plaintiff cannot fulfill the physical demands of nursing, not only with respect to lifting, pushing and pulling, but also with respect to the use of her hands. Because of her compensable injury, Plaintiff has suffered a loss of protective sensation in her hands and cannot do such routine nursing tasks as opening an IV bag or starting an IV.
7. Following her compensable injury, Plaintiff has been a patient of Dr. Baker, then Dr. Miller, in the Pain Management Clinic at Valdese Hospital. From May 2004 until December 2007, she had a total of 19 epidural steroid injections in her cervical spine to relieve her neck and arm pain.
8. Plaintiff stopped working on January 10, 2006 and has not worked since then. Because Defendants did not reinstate temporary total disability (TTD) compensation when she stopped working, Plaintiff filed a Form 33 on May 26, 2006, resulting in a hearing being scheduled on July 11, 2006. Immediately prior to the hearing, the parties agreed that Defendants would re-start TTD compensation as of July 10, 2006. *Page 6 
9. Dr. Miller further clarified Plaintiff's physical restrictions in a report on May 3, 2006. Per Dr. Miller, Plaintiff cannot perform patient care duties as a nurse, because such duties involve unplanned events under exigent circumstances that potentially require significant physical exertion beyond Plaintiff's abilities.
10. While taking the medications prescribed for her compensable condition, Plaintiff cannot be assured of the degree of mental concentration required of a registered nurse in a direct patient care setting.
11. Plaintiff's ability to work as a registered nurse is limited to an administrative or training position, which does not expose her to the possibility of direct patient intervention. Plaintiff's lengthy experience in nursing gives her much to offer, though, to prospective employer in a non-clinical role, if she can achieve the requisite academic qualifications.
12. On January 24, 2008, Dr. Miller completed a physical capacities assessment form. Plaintiff was restricted to sedentary work. She could perform simple grasping with her right hand, but only rarely with her left hand. She could not perform firm grasping with her left hand nor perform fine manipulation with either hand, and she could not push or pull with her left hand more than rarely. She could lift up to 10 pounds up to 10 times per day and 10-24 pounds rarely, with "rarely" defined as once in a two-hour period.
13. With her present level of activity, Plaintiff is stable on her present medications. Increased levels of activity increase her need for medication. The numbness in both of her arms is worse on the left, and she has headaches and loss of fine mother control and sensation in the fingers of both hands.
14. Plaintiff has great difficulty in typing for more than a brief period of time, as confirmed by Ms. Howell, who is the rehabilitation professional assigned to this claim by *Page 7 
Defendants. Plaintiff knows how to type but is reduced to using only two fingers and the thumb on her right hand because of her compensable condition.
15. In September 2006, Plaintiff began meeting with Ms. Howell and also began her own job search. Ms. Howell also supervised a job search by Plaintiff, which lasted from February 10, 2007 through December 24, 2007.
16. Plaintiff was energetic and cooperative in her job search. In a four-month period, she contacted 146 different potential employers and sent her resume and application letters to more than 50 of them. However, Plaintiff and Ms. Howell did not succeed at finding employment for Plaintiff suitable to her work restrictions and then-present level of training. They did find jobs available that Plaintiff could physically do, but these jobs required at least a bachelor's level nursing degree.
17. Ms. Howell described Plaintiff as "one of the top-motivated persons that I know" as far as her vocational rehabilitation efforts are concerned.
18. Plaintiff decided to take two computer courses at Western Piedmont Community College in the fall semester of 2007. In January 2008, she enrolled in the spring semester, taking courses that are preliminary to entry in an "RN to BSN" program, which is designed to take experienced registered nurses to the bachelor's degree level in nursing.
19. In February 2008, Ms. Howell prepared a revised individualized rehabilitation plan, which adopted Plaintiff's return to school as the plan. Defendants have paid for the tuition, books, fees and incidental expenses related to Plaintiff's schooling at WPCC since that time.
20. Beginning on February 3, 2008, the status reports by Ms. Howell have embodied the action plan of Plaintiff obtaining her BSN degree, in lieu of the prior job search plan. *Page 8 
21. In the spring semester of 2008, Plaintiff took a heavy course load. She did well in her studies, but the amount of work required caused significant exacerbation of her neck and arm pain and the numbness and loss of motor abilities in her hands. To do her work, Plaintiff had to have extensive help in note-taking and typing up assignments from persons paid by the disability services program at WPCC and from her family members. Defendants did not pay for any of this assistance.
22. Since Plaintiff has been in school, Ms. Howell has asked her to report in once a week to provide an update on her progress and any administrative matters that needed to be handled. At one point in the spring of 2008, Plaintiff became somewhat uncommunicative with Ms. Howell. This was during a time shortly after Plaintiff's father had died, at the end of March 2008, and Plaintiff was handling the arrangements. Nonetheless, Plaintiff did communicate in time with Ms. Howell such that they were able to meet a deadline with regard to Plaintiff's registration for summer classes.
23. On May 19, 2008, Dr. Miller confirmed that the following accommodations are "medically necessary" for Plaintiff in order to help control her pain levels while she pursues her schooling: Plaintiff should carry no more than six credit hours per semester. She needs a laptop computer with voice recognition software and a steno-microphone in order to reduce her typing demands. She needs a durable, high-quality cart to carry her books and the computer. She also needs periodic massage therapy and other modalities of physical therapy to treat her pain and muscle cramping without additional medications.
24. In Plaintiff's pursuit of her education, it is medically necessary for her to avoid typing so that the symptoms from her post-laminectomy syndrome are not aggravated. *Page 9 
25. Ms. Howell concurs that Plaintiff needs assistance with typing, and she has incorporated such assistance as necessary in her written rehabilitation plan for Plaintiff. The plan, however, has assumed that such assistance would continue to be provided through WPCC's (or some other state educational institution's) disabilities services office at state expense.
26. WPCC's disability services office has not always been able to provide the assistance Plaintiff needs.
27. Ms. Howell has reported to Defendants several times Plaintiff's difficulties with pain and numbness from typing, and Ms. Howell has told Defendants that she felt that the computer and other equipment recommended by Dr. Miller would assist Plaintiff in her rehabilitation because it would relieve her pain and allow her to focus on her studies more. Following Dr. Miller's May 19, 2008 letter, Plaintiff, through counsel, also made several requests to Defendants to have them provide the equipment. Defendants have declined to provide the requested equipment.
28. Plaintiff had a relatively inexpensive cart to assist with carrying her books, but it was not very study and quickly wore out and became broken under the rigors of daily use.
29. On August 15, 2008, Plaintiff's counsel sought advance payment of $475.00 for an assistive technology evaluation for Plaintiff with the North Carolina Division of Vocational Rehabilitation Services (NCDVRS). Defendants did not respond.
30. On August 27, 2008, Plaintiff underwent an evaluation with Ms. Kennerly, an assistive technology consultant with NCDVRS. The goal of the evaluation was to identify means of assisting Plaintiff to overcome her physical challenges in order to increase her function and independence. Following the evaluation, Ms. Kennerly recommended Dragon "Naturally *Page 10 
Speaking" 10.0 voice recognition software, a laptop computer on which to run the program, and a digital voice recorder compatible with the program.
31. A laptop computer (as opposed to a desktop) is a necessary adjunct to the voice recognition software for two reasons: First, the program builds a customized user file, which must be built and maintained on a single computer and is not transferable between computers. Second, the computer must be portable so that it may go wherever Plaintiff goes, to help her in her class work, homework, and, if and when the time comes, employment.
32. The total cost of the equipment Plaintiff has requested from Defendants, as reflected in a June 5, 2008 letter from Plaintiff's counsel to Defendants' counsel, is approximately $1,500.00. This includes a Dell laptop computer, Microsoft Office software, Dragon "Naturally Speaking" software, a steno mask, and a high-quality book cart.
33. There is a computer with the Dragon voice recognition software installed in the WPCC computer lab, but it is not practical for Plaintiff to use it to do her assignments if there are other students in the lab, because her speaking disturbs them.
34. As of the date of the hearing, Plaintiff had applied to the BSN programs at Western Carolina University and Appalachian State University.
35. It is found that if Plaintiff had the laptop computer set-up with the voice recognition software, she could complete her education more quickly.
36. Defendants' defense of Plaintiff's claim in this matter is not without reasonable grounds and does not constitute stubborn, unfounded litigiousness.
 *********** *Page 11 
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff's pursuit of her education is reasonable vocational rehabilitation and is reasonably required to lessen her period of disability. Defendants have not taken issue with paying for Plaintiff's schooling and the associated books, fees and incidental expenses. They do not contest their responsibility to pay for her pursuit of her BSN degree; notably, their asserted issue of her compliance with vocational rehabilitation is, itself, grounded in her schooling. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
2. In order to pursue her education effectively and within the physical restrictions related to her compensable condition, Plaintiff reasonably requires the laptop computer, voice recognition software, digital voice recorder, steno mask microphone and high-quality durable cart. This equipment is reasonably required to relieve Plaintiff's pain related to her compensable condition and thus further her vocational rehabilitation. Further, this equipment will be reasonably required to lessen Plaintiff's period of disability when she is ready for the job market. As such, Plaintiff is entitled to have Defendants provide this equipment to her. Plaintiff is also entitled to payment of the $475.00 fee for the evaluation with NCDVRS. Id.
3. Defendants contend that, under McDonald v. Brunswick ElectricMembership Corporation, 77 N.C. App. 753, 336 S.E.2d 407 (1985), they should not have to provide Plaintiff with a laptop computer. Essentially, Defendants contend that the laptop is analogous to the van that the plaintiff in McDonald purchased following his catastrophic injury. The McDonald Court found that the defendants therein were only responsible for paying for the handicap modifications to the van but not the van itself, because it was not reasonable to construe the van *Page 12 
itself as "other treatment or care" and/or "rehabilitative services" within the meaning of N.C. Gen. Stat. § 97-29 as it read at the time. Analogizing the voice recognition software to the handicap modifications in McDonald, Defendants argue that the laptop is not a service or treatment but is a "tangible, non-medically related" item, and therefore that they should be responsible only for the voice recognition software and not for the laptop it is being run on. Defendants' argument is misplaced. InMcDonald, the handicap modifications allowed the plaintiff to use the van. In the present case, however, the purpose of the voice recognition software is not to permit Plaintiff to use the computer, but to aid Plaintiff in the rehabilitative activity of taking classes. Because the laptop computer is a necessary adjunct to the voice recognition software, it cannot meaningfully be separated from the voice recognition software that accommodates Plaintiff's physical limitations as she pursues her education, and, as such, it is directly tied to her rehabilitation.
4. As Defendants have accepted Plaintiff's pursuit of her BSN degree as the course of vocational rehabilitation in this claim, and because her education is reasonably required to lessen the period of disability in this claim, Plaintiff is entitled to have Defendants pay for her tuition, books, fees, reasonable incidental expenses and mileage through the entire BSN course of study, so long as Plaintiff continues to make reasonably satisfactory progress toward her degree. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Plaintiff is entitled to have Defendants authorize and provide the treatment recommended for Plaintiff's compensable condition by Dr. Miller, including but not limited to massage therapy and other modalities of physical therapy. Id. *Page 13 
6. Defendants are not entitled to an order directing Plaintiff's compliance with vocational rehabilitation, as they have not shown that such an order is necessary or appropriate at this time.Id.
7. Defendants' defense of this claim and their assertion of the argument for an order directing compliance with vocational rehabilitation have not been without reasonable grounds and have not constituted stubborn and unfounded litigious conduct. As such, Plaintiff is not entitled to an award of attorney's fees and costs under N.C. Gen. Stat. § 97-88.1.
8. This matter is presently before the Full Commission upon Defendants' appeal of an Opinion and Award awarding benefits to Plaintiff. The Full Commission concurs with the earlier Opinion and Award that Plaintiff is entitled to benefits. Therefore, in its discretion, and in accordance with N.C. Gen. Stat. § 97-88, the Full Commission concludes that the costs incurred by Plaintiff in defending this appeal, including reasonable attorney's fees, shall be paid by Defendants.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall provide Plaintiff with a laptop computer, voice recognition software, digital voice recorder, steno mask microphone and high-quality durable cart to carry her books and computer equipment.
2. Defendants shall pay for Plaintiff's tuition, books, fees, reasonable incidental expenses and mileage through the entire BSN course of study, so long as Plaintiff continues to make reasonably satisfactory progress toward her degree. *Page 14 
3. Dr. Miller is hereby designated as Plaintiff's treating physician, and Defendants shall authorize and pay for the treatment he recommends for Plaintiff's compensable condition, including but not limited to massage therapy and other modalities of physical therapy.
4. Defendants' request for an order directing Plaintiff's compliance with vocational rehabilitation is DENIED at this time.
5. Defendants shall reimburse Plaintiff the $475.00 fee for the evaluation with NCDVRS.
6. Plaintiff shall submit an affidavit detailing the attorney and staff time spent defending this appeal. As part of the costs of this action, Defendant shall pay to Plaintiff's counsel a reasonable attorney's fee which shall be determined by the Full Commission based upon Plaintiff's affidavit.
7. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to each of the following witnesses and/or providers, in the amount shown or the amount actually billed, whichever is less: $258.00 to Ms. Howell; $172.00 to Ms. Kennerly; and $340.00 to Dr. Miller.
This the 1st day of December, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR *Page 15 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1